UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARTISTS RIGHTS ENFORCEMENT CORP.,

                        Plaintiff,

– against –

THE ESTATE OF JOSEPH ROBINSON, JR., LELAND ROBINSON, SUGARHILL MUSIC PUBLISHING INC., a/k/a SUGAR HILL MUSIC PUBLISHING, INC., SUGAR HILL RECORDS INC.,

                        Defendants.

**OPINION AND ORDER**

15 Civ. 9878 (ER)

---

Ramos, D.J.:

      Artists Rights Enforcement Corp. ("AREC" or "Plaintiff") brings this action against Defendants The Estate of Joseph Robinson Jr., Leland Robinson, Sugarhill Music Publishing Inc., a/k/a Sugar Hill Music Publishing Inc. ("SMP") and Sugar Hill Records Inc. (together, the "Defendants"). Before this Court is the Defendants' motion to dismiss on the grounds that: (1) Plaintiff does not have standing to assert its declaratory judgment claim, (2) this Court should abstain from exercising jurisdiction as there is a parallel pending state court action, and (3) Plaintiff has failed to join a necessary party whose joinder would destroy diversity.

      For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

**I.     Background**[1]

Between July 17, 1980 and January 28, 1981, the following songwriters, artists and music publishers entered into five separate Exclusive Songwriters Agreements with SMP:  Melvin Glover, Eddie Morris, Nathaniel Glover Jr., Guy Todd Williams, The Estate of Robert Keith Wiggins, Sharon Green Jackson, Keith Caesar, Kevin Smith, Rodney Stone and Reginald A. Payne (together, the "Songwriters").  Compl. at ¶ 12.  The Exclusive Songwriters Agreements, which were signed by Joseph Robinson Jr. on behalf of SMP, gave SMP[2] control over the Songwriters' creative works and required SMP to, *inter alia*, make royalty payments and provide semi-annual royalty reports on February 15 and August 15 of each year.  *Id.* at ¶¶ 12, 14, 15.  However, Defendants failed to perform these obligations for two decades.  *Id.* at ¶ 17.

Accordingly, between April 15, 1999 and April 23, 2003, the Songwriters each signed letter agreements with AREC, an entity specializing in the collection of royalties and other fees due songwriters and music publishers from their artistic material or musical performances.  *Id.* at ¶¶ 11, 17.  AREC was retained to collect any and all royalties and other assets owed to them, and to obtain an accounting for such royalties.  *Id.* at ¶ 17.  Despite AREC's retention, Defendants continued to refuse to perform their obligations, which has led to multiple lawsuits in both state and federal courts, two of which have ended in settlement agreements.

   **A. Prior Litigation and Settlement Agreements**

In 2001, these same Songwriters filed an action against Joseph Robinson Jr., Leland Robinson, the Sugarhill entities, other members of the Robinson family and other entities owned

---

[1] The following facts are drawn from allegations contained in the Complaint (Doc. 1), which the Court accepts as true for purposes of the instant motion.  *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 134 (2d Cir. 1998).

[2] SMP was incorporated on December 31, 1981.  Compl. at ¶ 14.  Thus, it was an unincorporated entity when the Exclusive Songwriters Agreements were executed.  *Id.*

or controlled by the Robinsons (together, the "Robinson Defendants") in the United States District Court for the Southern District of New York, entitled *Caesar v. Sugarhill* ("Prior Federal Action") to recover royalties and other fees. *Id.* at ¶ 19. AREC was not a party to that action. Complaint, *Caesar v. Sugarhill*, No. 01 Civ. 6180 (RMB) (S.D.N.Y. July 9, 2001).

The Prior Federal Action settled on June 14, 2002. Compl. at ¶ 20. Pursuant to the settlement, the Robinson Defendants were court-ordered to pay AREC, on behalf of the Songwriters, $225,000 in nine separate installments of $25,000 each, and to enter into a written Settlement Agreement ("2002 Settlement Agreement"). *Id.* at ¶ 21. The 2002 Settlement Agreement obligated the Robinson Defendants to, *inter alia*, give AREC copies of all relevant licenses from 1997, direct third parties to pay royalties directly to AREC, provide an accounting of the royalties due, and pay AREC the Songwriters' royalties. *Id.*

The Songwriters' troubles did not end with this settlement. The Robinson Defendants only paid the first installment payment and refused to execute the 2002 Settlement Agreement. *Id.* at ¶ 22. This caused the parties to appear before Judge Berman on March 12, 2003 during which the parties agreed to a rider to be signed within ten days, and to execute the 2002 Settlement Agreement as drafted by the Songwriters' counsel. *Id.* However, the Robinson Defendants again refused to execute the 2002 Settlement Agreement, or to abide by its terms or the terms of the rider. *Id.* at ¶ 23.

The Robinson Defendants also allegedly retained an attorney to write a letter to AREC, purportedly on behalf of Melvin Glover and Eddie Morris, stating that the two songwriters wished to withdraw from the yet unexecuted settlement. *Id.* at ¶ 24. This led to another conference before Judge Berman on April 15, 2003. *Id.* at ¶¶ 24-25. The Songwriters' counsel proffered declarations signed by Melvin Glover and Eddie Morris specifically disclaiming that

they had retained separate counsel and affirming that they did not wish to withdraw from the 2002 Settlement Agreement. *Id.* at ¶ 26. Melvin Glover and Eddie Morris also reaffirmed that AREC was their appointed agent. *Id.* Judge Berman so ordered this appointment and directed the Robinson Defendants to comply with the 2002 Settlement Agreement and its rider, which obligated the Robinson Defendants to deal directly and solely with AREC. *Id.* at ¶¶ 26-27. Despite this order, the Robinson Defendants persisted in refusing to sign the 2002 Settlement Agreement or comply with its terms. *Id.* at ¶ 28.

On May 12, 2003, AREC filed a state action in the New York County Supreme Court entitled *Artists Rights Enforcement Corp. v. Joseph Robinson, et al.*, Index No. 601495/03 ("First State Action") as a third party beneficiary under the court orders, the 2002 Settlement Agreement and rider against the Robinson Defendants with the exception of Leland Robinson. *Id.*, Cinque Decl. (Doc. 19) Exhibit B at ¶ 57. AREC sought compensatory and punitive damages for breach of contract, tortious interference with contractual relations, tortious interference with prospective economic advantage, breach of third party beneficiary contracts and declaratory relief. Compl. at ¶ 28.

The Robinson Defendants executed the 2002 Settlement Agreement on June 13, 2003, during the pendency of the First State Action. *Id.* at ¶ 29. However, the Robinson Defendants refused to sign the agreed upon rider and instead signed a unilaterally modified rider which was rejected by the Songwriters. *Id.* Furthermore, the Robinson Defendants only paid the first three of the nine required payments. *Id.* at ¶ 30. Thus, on August 12, 2004, AREC and the Robinson Defendants executed a rider extending the Robinson Defendants' reporting and payment deadlines. *Id.* at ¶¶ 30-31. The Robinson Defendants again failed to comply with those terms,

only providing AREC $3,892.92 on November 5, 2004 without indication as to the source of the payment or an accounting. *Id.* at ¶¶ 32, 35.

Moreover, the Robinson Defendants allegedly hired an attorney for a second time who purported to represent Melvin Glover. *Id.* at ¶ 34. The attorney allegedly sent a letter to the Robinson Defendants on September 21, 2004 which stated that Melvin Glover wished to withdraw from the settlement. *Id.* The Robinson Defendants drafted another letter, purportedly signed by Eddie Morris, which also stated that Eddie Morris wanted to withdraw from the settlement. *Id.* AREC was not provided with copies of these letters though they would alter AREC's rights. *Id.*

On July 17, 2007, the parties agreed to another settlement agreement ending the First State Action ("2007 Settlement Agreement"). *Id.* at ¶ 36. The 2007 Settlement Agreement reaffirmed the 2002 Settlement Agreement as modified by the rider. *Id.* The Robinson Defendants agreed to make 12 semi-annual settlement payments totaling $268,000 over six years directly to AREC, provide copies of all licenses directly and only to AREC, and directly pay AREC any amounts due and owing to the Songwriters. *Id.* The 2007 Settlement Agreement also provided that if either party receives a license request or a payment for a license from a third party, and does not inform the other party within fifteen days, the party who received payment shall owe the other the payment due, as well as a bonus in the amount of twenty percent of the amount otherwise owed. *Id.* at ¶ 37.

Even though the Robinson Defendants had entered into two settlement agreements, they continued to fail to fully abide by their obligations. At the end of 2010 and beginning of 2011, yet another attorney who purported to represent Melvin Glover and Eddie Morris demanded that the record companies and Defendants make the royalty payments to the two songwriters instead

of AREC.  *Id.* at ¶¶ 38-39, 42.  On August 1, 2011, Defendants sent a letter to AREC, notifying AREC of this demand.  *Id.* at ¶ 42.  Furthermore, AREC has not received *any* royalty statements or payments for the Songwriters from the Defendants since 2010 even though certain of the Songwriters' works have been licensed repeatedly after 2010.  *Id.* at ¶¶ 16, 43.

In response, AREC brought another action in the New York County Supreme Court entitled *Artists Rights Enforcement Corp. v. Joseph Robinson, et al.*, Index No. 652582/2012 on July 25, 2012 ("Second State Action"), which is currently pending.  *Id.* at ¶ 45.  This time, AREC brought the action on behalf of Melvin Glover and Eddie Morris against Joseph Robinson, Jr. and other Robinson-controlled entities seeking breach of contract damages and declaratory judgment.  *Id.*

### B. Notice of Default and Demand to Cure

On April 1, 2015, AREC also sent Notice of Default and Demand to Cure letters to Defendants on behalf of all of the Songwriters.  *Id.* at ¶ 46.  The letters demanded full and complete payment of all royalties and delivery of the royalty statements not previously provided from January 1, 2007.  *Id.* at ¶ 47.  The letters further stated that Defendants' failure to do so would be a material breach of the Exclusive Songwriters Agreements, and that the right to terminate the agreements might be exercised.  *Id.* at ¶ 48.

Defendants responded to AREC's letters on April 29, 2015 stating that (1) the Defendants had accounted and made payments to AREC up until 2010, at which point they were notified by Melvin Glover and Eddie Morris that the two songwriters' agency relationship with AREC was terminated, and (2) that the Second State Action will decide who is entitled to royalties and in what amount.  *Id.* at ¶ 49.  On May 4, 2015, AREC's counsel sent an email to Defendants'

counsel advising that the Defendants' failure to cure led to the termination of the Exclusive Songwriters Agreements. *Id.* at ¶ 50.

### C. Procedural History

On December 18, 2015, Plaintiff filed the instant action bringing claims for breach of contract, accounting, and a declaratory judgment that the termination of the Exclusive Songwriters Agreements is valid and effective. (Doc. 1) On April 29, 2016, Defendants filed the instant motion to dismiss. (Doc. 18) Defendants assert that Plaintiff does not have standing to bring its declaratory judgment claim, Plaintiff is improperly splitting the action, and Sugar Hill Music Publishing Ltd. is a required party to the instant litigation whose joinder would destroy diversity. On May 27, 2016, Plaintiff filed its opposition to the motion that, among other things, suggests that Defendants perhaps intended to request abstention as opposed to arguing that Plaintiff has improperly split the action.[3] (Doc. 21) On June 10, 2016, Defendants submitted a reply which appeared to abandon the allegation of improper claim splitting and, following Plaintiff's suggestion, requested that the Court abstain from adjudicating the instant action. (Doc. 22)

## II. Legal Standards

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) is the proper procedural vehicle for a motion to dismiss for lack of Article III standing rather than Rule 12(b)(6) because it concerns "the authority of a federal court to exercise jurisdiction." *All. for Envtl. Renewal, Inc. v. Pyramid*

---

[3] The claim splitting doctrine requires a plaintiff to present all of his theories and evidence relating to a transaction in one action as opposed to bringing overlapping or repetitive actions in different courts or at different times. *LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 570 (2d Cir. 2015). However, claim splitting does not apply if the contemporaneous exercise of concurrent jurisdictions is between a state court and federal court. *Kanciper v. Suffolk Cty. Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013).

*Crossgates Co.*, 436 F.3d 82, 88 n. 6 (2d Cir. 2006).  A motion to dismiss based on the abstention doctrine is also properly construed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  *Henvill v. Metro. Transp. Auth.*, No. 13 Civ. 7501 (GBD), 2016 WL 519039, at *2 (S.D.N.Y. Feb. 5, 2016).  Thus, the Court will construe the Defendants' motion to dismiss for lack of standing and abstention under Rule 12(b)(1).

"Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a case."  *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013) (citation and internal quotation marks omitted).  In resolving a 12(b)(1) motion, a court may refer to evidence outside the pleadings such as affidavits.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1010–11 (2d Cir. 1986).

### B.  Rule 12(b)(7)

Under Rule 12(b)(7), an action must be dismissed for failure to join a party under Rule 19 if the absent party is (1) necessary but joinder is not feasible, and (2) indispensable to the action.  *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724-25 (2d Cir. 2000).  In determining a Rule 12(b)(7) motion, a court may accept all factual allegations in the complaint as true and draw inferences in favor of the plaintiff.  *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 354 (2d Cir. 2015).  Furthermore, a court can consider matters outside of the pleadings, such as affidavits, in deciding a 12(b)(7) motion.  *Holland v. Fahnestock & Co., Inc.,* 210 F.R.D. 487, 495 (S.D.N.Y. 2002).

**III.    Discussion**

   **A.  Article III Standing**

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.' That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)). "[I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Id.* at 273-74 (internal quotation marks and alterations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). If a party lacks Article III standing, a court has no subject matter jurisdiction to hear its claims. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). Thus, the question of standing must be resolved prior to deciding a case on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

The party seeking declaratory judgment bears the burden to demonstrate standing, *Rojas v. Don King Prods., Inc.*, No. 11 Civ. 8468 (KBF), 2012 WL 760336, at *6 (S.D.N.Y. Mar. 6, 2012), and the Court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," *Thompson v. Cty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citation omitted). Further, once Defendants' motion to dismiss has put Plaintiff's Article III standing at issue, the Court has discretion to determine the appropriate

9

procedure. *All. For Envtl. Renewal, Inc.*, 436 F.3d at 87-88. For example, the Court may allow Plaintiff to conduct limited discovery with respect to standing before a resolution on motion supported by affidavits, conduct a hearing limited to Article III standing, proceed to trial and make a jurisdictional ruling at the close of evidence if the evidence regarding standing overlaps with evidence for factual issues, or make a preliminary finding subject to revision later in the proceedings or at trial. *Id.* (citations omitted).

Defendants argue that AREC does not have standing to seek a declaratory judgment that the termination of the Exclusive Songwriters Agreements was valid and effective because AREC is only an agent of the Songwriters. Defendants are correct that a mere agent of a principal does not have standing. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("[A] mere power-of-attorney—*i.e.*, an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor—does not confer standing to sue in the holder's own right because a power-of-attorney does not confer an ownership interest in the claim") (citation omitted). "It is the principal who is entitled to any advantage flowing from the agent's authorized acts." *Colonial Sec., Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 461 F. Supp. 1159, 1165 (S.D.N.Y. 1978). However, an agent can maintain an action in his own name on behalf of the principal if the agent is either a party to the contract, a transferee, or a holder of an interest in the contract. *Id.* (citing Restatement (Second) of Agency §§ 363, 372 (1958)). Defendants argue that AREC failed to allege any of the above.

AREC responds that it has standing because an agent who has acted as an agent during the course of a transaction involved in the litigation can sue for damages suffered by the principal. Pl.'s Opp. at 12-13. Specifically, AREC alleges that it has standing because it had been dealing with the Defendants for over 15 years regarding Defendants' failure to abide by the

Exclusive Songwriters Agreements, it had negotiated settlements with the Defendants concerning those agreements, Defendants made promises to AREC directly, and AREC had been court-ordered to be the irrevocably appointed agent for the Songwriters for the receipt of royalty reports and royalty income. *Id.* at 13; Compl. at ¶ 26. However, each of the cases on which AREC relies involve agents that held an independent interest in the contract or were parties to the contract, and thus had independent standing. For example, in *Leber Assocs., LLC v. Entm't Grp. Fund, Inc.*, No. 00 Civ. 3759 (LTS MHD), 2003 WL 21750211, at *12 (S.D.N.Y. July 29, 2003), the contracts at issue provided that the agents had an independent right to one million dollars of the amount guaranteed to the principal. Similarly, in *Bache & Co. v. Int'l Controls Corp.*, 324 F. Supp. 998, 1004-05 (S.D.N.Y. 1971), the agent was held to have standing because he had contracted in his own name, and thus, was an actual party to the contract.[4]

Although at the pleading stage, "standing allegations need not be crafted with precise detail," *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003), AREC does not provide the Court with any of the Exclusive Songwriters Agreements, the only contracts as to which it seeks declaratory judgment, and does not allege that it is a party to the Exclusive Songwriters Agreements, a transferee, or a holder of beneficial interest in those agreements. In fact, the Complaint alleges that the Songwriters and SMP are the only parties to the Exclusive

---

[4] The two out-of-Circuit cases Plaintiff cites were also decided on similar facts. In *Global Aerospace, Inc. v. Platinum Jet Mgmt., LLC*, 488 F. App'x 338, 340 (11th Cir. 2012), the agent was authorized by its principal to issue contracts, sign documents, handle claims, receive funds, and litigate. Notably, the agent issued the contract at issue in its own name, and the contract could not be amended without the agent's consent. *Id.* at 340-341. Accordingly, the Eleventh Circuit held that the agent standing. *Id.* In *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 258-59 (5th Cir. 1980), the agents could sue in their own name because they either had a beneficial interest or were party promisees in the contract as "agents to whom performance was due."

11

Songwriters Agreements, Compl. at ¶¶ 12-14, and AREC was retained by the Songwriters approximately two decades after those agreements were executed, *Id.* at ¶ 17.[5]

AREC also does not assert that it is a transferee of any of the Songwriters' interests. An assignee for the sole purpose of collection has standing since the assignee holds legal title to the debt, even when the assignee has agreed to remit the proceeds to the assignor. *Sprint Commc'ns Co.*, 554 U.S. at 284–85. While AREC states that the Songwriters retained AREC through letter agreements to collect and receive an accounting for the royalties, AREC fails to allege whether it was an *assignee* of those claims rather than, as Defendants' argue, a mere agent for collection without any legal title to the debt. Compl. at ¶ 17. Furthermore, since the Court has not been provided with those letter agreements, it cannot ascertain the full scope of the relationship between AREC and the Songwriters. Without any additional allegations the Court cannot find that AREC is a transferee of any of the Songwriters' interests.

Finally, AREC does not sufficiently allege that it has any independent beneficial interest in the Exclusive Songwriter Agreements at issue. It is not sufficient that AREC has a beneficial interest in the settlement agreements because the Complaint does not bring an action based on those settlement agreements. For AREC to show that it has an interest in the Exclusive Songwriters Agreements, it must allege that the Exclusive Songwriters Agreements provided an independent interest to the Songwriters' agent, or the letter agreements demonstrate that AREC has an independent interest in the Exclusive Songwriters Agreements. AREC does not allege or

---

[5] It is possible that AREC is a party to the settlement agreements, and that those settlement agreements have amended the Exclusive Songwriters Agreements and stand in their place. However, AREC has not alleged this. The 2007 Settlement Agreement does require Defendants to pay AREC an additional twenty percent of the amounts due if Defendants fail to properly remit payments on any license required to be sent to AREC. Compl. at ¶ 37; Pl.'s Opp. at 13. Plaintiff claims that this additional twenty percent is "a remedy that flows solely to AREC." Pl.'s Opp. at 13. The Court therefore notes without deciding that AREC arguably has standing to seek enforcement of the 2007 Settlement Agreement. However, AREC seeks a declaratory judgment regarding the Exclusive Songwriters Agreements, not the settlement agreements.

provide evidence of any of the above. Consequently, the Court grants the Defendants' motion to dismiss Plaintiff's declaratory judgment claim without prejudice.

### B. Abstention

For the first time on reply, Defendants argue that the Court should abstain from adjudicating this case because there is a pending parallel state action. A court has discretion to consider an argument made for the first time in a reply brief, though it is not required to do so. *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005). After considering the Defendants' argument, the Court finds that it need not abstain from adjudicating this action.

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction.'" *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). However, the Supreme Court has recognized several categories of circumstances in which abstention may be appropriate. *See, e.g.*, *id.* at 814; *Younger v. Harris,* 401 U.S. 37, 43-44 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943); *R.R. Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496, 498 (1941). These abstention doctrines pose "extraordinary and narrow exception[s]" to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 813, 814, 817 (citations omitted).

In *Colorado River*, the court held that "in situations involving the contemporaneous exercise of concurrent jurisdiction," a federal court, in "exceptional" circumstances, may abstain from exercising jurisdiction if parallel state-court litigation might result in "comprehensive disposition of litigation" and abstention would conserve judicial resources. *Id.* at 813, 817-18 (internal brackets and quotation marks omitted). To determine whether *Colorado River*

13

abstention is appropriate, the court considers six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction," *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (U.S. 1983)):

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (citations omitted).  No one factor is decisive; instead, a court must engage in a "carefully considered judgment[,] taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise."  *Colorado River,* 424 U.S. at 818 (citation omitted); *see also Moses H. Cone,* 460 U.S. at 16 (explaining that the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case").  Moreover, the facial neutrality of a factor "is a basis for retaining jurisdiction, not for yielding it."  *Woodford*, 239 F.3d at 522.  Before engaging in the six-factor analysis, however, a court must make a threshold determination that the federal and state court cases are "parallel."  *Dittmer v. County of Suffolk,* 146 F.3d 113, 117-18 (2d Cir. 1998).

       **1.**       **The instant action is not parallel to the pending state action**

The Court finds that the instant case and the Second State Action are not parallel. Federal and state proceedings are "parallel" for abstention purposes when the two proceedings "are essentially the same," meaning that "there is an identity of parties, and the issues and relief sought are the same." *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).  Nevertheless, "[p]erfect symmetry of parties and issues is

14

not required.  Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Id.* (quoting *In re Comverse Tech., Inc.,* No. 06 Civ. 1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)) (emphasis in original) (internal quotation marks omitted).  Yet if the court has "[a]ny doubt" regarding the parallel nature of the two actions, the outcome should be resolved in favor of exercising federal jurisdiction.  *Id.*

Though both the Second State Action and the instant action are based on much of the same history recounted above, the two actions concern different parties and claims.  While both actions assert breach of contract claims, in the present action, the breach of contract claim is brought by AREC on behalf of all of the Songwriters *except* for Melvin Glover and Eddie Morris whereas the Second State Action *only* brings a breach of contract claim on behalf of Melvin Glover and Eddie Morris.  Compl. at ¶¶ 54-61; Cinque Decl. Exhibit C at ¶¶ 36-44.  The two cases are also asserted against slightly different groups of defendants.[6]

Furthermore, the Second State Action primarily involves breach of the settlement agreements and related court orders, and does not pertain to events related to the purported termination of the Exclusive Songwriters Agreements.  Cinque Decl. Exhibit C at ¶¶ 36-48.  In contrast, the instant action brings claims exclusively regarding the Exclusive Songwriters Agreements, including events related to their purported termination, that post-date the filing of the Second State Action.  Compl. at ¶¶ 62-64.  Thus, the two actions are not parallel.

---

[6] While both cases are brought against Joseph Robinson Jr., the instant action is also brought against Leland Robinson while the Second State Action is not.  The two cases are also brought against different corporate entities.  The instant action is brought against Sugarhill Music Publishing Inc., a/k/a Sugar Hill Music Publishing Inc., and Sugar Hill Records Inc., but the Second State Action is brought against Sugar Hill Records Ltd., Sugarhill Music Publishing, Ltd., Twenty Nine Black Music and Gambi Music, Inc.

## 2. Even if the actions were parallel, Defendants have not demonstrated that abstention is appropriate

Because the two actions are not parallel, the Court need not conduct an analysis of the six *Colorado River* abstention factors. However, abstention would not be appropriate even if the actions were parallel because Defendants fail to demonstrate that the *Colorado River* abstention factors weigh in favor of abstention. The moving party bears a heavy burden to prevail on a motion to dismiss under the *Colorado River* abstention doctrine. *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 474 (S.D.N.Y. 2001) (citations omitted). Here, Defendants do not even mention the six *Colorado River* abstention factors, and merely assert that Plaintiff should not be permitted to seek different remedies in federal court for the alleged failure to pay royalties. Defs.' Reply at 4.

### C. Failure to Join a Party Under Rule 19

Defendants also request the Court to dismiss the Complaint under Rule 12(b)(7), which is a motion to dismiss for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 establishes a two-step test for determining whether an action must be dismissed for failure to join an indispensable party. *See Viacom Int'l*, 212 F.3d at 724. First, the Court must determine whether an absent party belongs in the suit, and thus, is "necessary" under Rule 19(a). *Id.* Under Rule 19(a)(1), an absent party is "required" if:

> (A) in the person's absence complete relief cannot be accorded among those already parties, or (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)(1). If the absent party is not necessary, then the Court need not go on to the next step. *Viacom Int'l*, 212 F.3d at 724. If the absent party is necessary but joinder is not

feasible (for example, for jurisdictional reasons), then the Court must determine whether the absent party is indispensable under Rule 19(b). *Id.* at 725. If the absent party is indispensable, then the Court should dismiss the action. *Id.* Rule 19(b) instructs the Court to consider the following factors to determine whether an absent party is indispensable:

> (1) to what extent a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b).

Defendants argue that Sugar Hill Music Publishing, Ltd. is an absent but necessary party because its interests would be impaired by this litigation. Defendants contend that if the Court declares that the Exclusive Songwriters Agreements were properly terminated, the absentee's copyright ownership interests in the Songwriters' works would be terminated. The Court finds that Sugar Hill Publishing Ltd. is not a necessary party under Rule 19(a). The Second Circuit requires the absentee to assert its own interest relating to the subject of the action in order to satisfy Rule 19(a)(1)(B). It is not sufficient that an existing party attempts to assert the absentee's interest on its behalf. *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (holding that defendant's attempt to assert the absentee's interest on its behalf falls outside of Rule 19(a)). Accordingly, even if it were true that Sugar Hill Publishing Ltd. has an interest in the present litigation, the fact that it is not asserting its own interest causes the Defendants' argument to fail.

Moreover, the Court does not find that Sugar Hill Publishing Ltd.'s absence would impede or impair its ability to protect its interest. As Plaintiffs argues, "prejudice to absent parties approaches the vanishing point when the remaining parties are represented by the same

counsel, and when the absent and remaining parties' interests are aligned in all respects." *Am. Trucking Ass'n, Inc.*, 795 F.3d at 360 (citation and quotations omitted); *see also Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 232–33 (S.D.N.Y. 2005) (holding that the absentee is not necessary because its interest will be adequately protected by existing parties in the litigation who have invoked the same rights that the absentee would invoke). Here, both the Defendants and Sugar Hill Publishing Ltd. have the same interest in preserving the Exclusive Songwriters Agreements. The absent party also has the same counsel as the Defendants, and has retained that same counsel for over a decade. Indeed, Defendants' counsel has represented the absent party in the Prior Federal Action and the First State Action, and currently represents it in the pending Second State Action. Pl.'s Opp. at 16. Therefore, this Court does not find that Sugar Hill Publishing Ltd. is a necessary party under Rule 19(a).

Since this Court concludes that the absentee is not a necessary party under Rule 19(a), it need not consider whether the absentee is an indispensable party under Rule 19(b). *Am. Trucking Ass'n, Inc.*, 795 F.3d at 361. Accordingly the motion to dismiss for failure to join a party pursuant to Rule 19 is denied.

## IV.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, the motion to dismiss is granted without prejudice as to Plaintiff's declaratory judgment claim. The motion to dismiss is otherwise denied on the basis of abstention or failure to join a necessary party. Plaintiff's breach of contract and accounting claims thus survive.

If Plaintiff chooses to file an Amended Complaint to re-assert its declaratory judgment claim, it must do so by March 28, 2017. If Plaintiff chooses not to file an Amended Complaint, the parties are directed to appear for a conference on April 20, 2017 at 11:00 a.m.

The clerk of the Court is respectfully directed to terminate the motion, Doc. 18.

It is SO ORDERED.

Dated:  March 7, 2017
        New York, New York

                                          _____
                                          Edgardo Ramos, U.S.D.J.