UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARTISTS RIGHTS ENFORCEMENT CORP.,

Plaintiff,

– against –

THE ESTATE OF JOSEPH ROBINSON, JR., LELAND ROBINSON, SUGARHILL MUSIC PUBLISHING INC., a/k/a SUGAR HILL MUSIC PUBLISHING, INC., and SUGAR HILL RECORDS INC.,

Defendants.

**OPINION AND ORDER**

15 Civ. 9878 (ER)

---

Ramos, D.J.:

Artists Rights Enforcement Corp. ("AREC" or "Plaintiff") brings this action against the Estate of Joseph Robinson Jr., Leland Robinson, Sugarhill Music Publishing Inc., a/k/a Sugar Hill Music Publishing Inc. ("SMP") and Sugar Hill Records Inc. (together, the "Defendants"). *See* Compl. (Doc. 1). On March 8, 2017, the Court partially granted Defendants' motion to dismiss and gave AREC leave to file an amended complaint. *See* Order dated March 8, 2017 (Doc. 33). AREC filed its First Amended Complaint ("FAC") on March 28, 2017 (Doc. 34).

Before this Court is the Defendants' motion to dismiss the FAC on the grounds that: (1) Plaintiff does not have standing to assert its declaratory judgment claim, and (2) Plaintiff did not adequately state a claim for tortious interference with contract.

For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

**I.     Background[1]**

The Court assumes familiarity with the record and its prior opinion, which details the facts and procedural history of this case, and discusses here only those facts necessary for its disposition of the instant motion.  See Order dated March 8, 2017 (Doc. 33).

Between July 17, 1980 and January 28, 1981, several songwriters, artists and music publishers (the "Songwriters") entered into Exclusive Songwriters Agreements with SMP.  FAC ¶ 13.[2]  The Exclusive Songwriters Agreements gave SMP control over the Songwriters' music catalogues and in return, required it to make royalty payments and provide semi-annual royalty reports.  *Id.* at ¶¶ 13, 16.  However, Defendants have not fulfilled their royalty payment and notice obligations.  *Id.* at ¶ 17.

Between April 15, 1999 and April 23, 2003, the Songwriters each signed letter agreements with AREC, retaining AREC to investigate and recover royalties.  *Id.* at ¶ 18; *see also* Declaration of James P. Cinque in Support of Defendants' Motion to Dismiss Counts II and II ("Cinque Decl.") (Doc. 47) Ex. B.[3]  In exchange, AREC became entitled to 50% of the royalties owing to the Songwriters.  FAC ¶ 19.

Beginning in 1999, AREC has been engaged in litigation with Defendants over Defendants' delinquent royalty payments.  *Id.* ¶ 21.  Litigation filed in this District in 1999 ended

---

[1] The following facts are drawn from allegations contained in the FAC (Doc. 34), which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] Those artists were Melvin Glover, Eddie Morris, Nathaniel Glover Jr., Guy Todd Williams, The Estate of Robert Keith Wiggins, Sharon Green Jackson, Keith Caesar, Kevin Smith, Rodney Stone and Reginald A. Payne (together, the "Songwriters").

[3] In considering a complaint on a motion to dismiss, a court may also consider any documents incorporated by reference or any document that is "integral" to the complaint because the complaint "relies heavily upon its terms and effect."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir 1995)).  Because AREC relies on the letter agreements to support its claim for standing and as the basis for its tortious interference claim, the Court finds the letter agreements, attached as Exhibit B to Mr. Cinque's declaration, integral to the FAC.

in a 2002 settlement agreement; however, Defendants refused to execute the agreement. *Id*. ¶¶ 23, 25. In response, presiding Judge Richard Berman entered an order on March 12, 2003 mandating that the Defendants "deal directly *and solely* with AREC" and requiring the parties to sign a rider to the 2002 settlement agreement. *Id.* ¶¶ 25–26 (emphasis added).

Defendants neither executed the rider nor abided by the terms of the 2002 settlement agreement. *Id.* ¶ 27.[4] The parties appeared before Judge Berman again on April 15, 2003 regarding conduct taken by Defendants allegedly on behalf of Songwriters Nathaniel Glover Jr. and Eddie Morris. *Id.* ¶¶ 28–29. After this conference, Judge Berman entered another order in which Glover and Morris reaffirmed that AREC was their "irrevocably appointed agent for . . . the receipt of royalty reports and royalty income." *Id.* ¶ 31.

AREC filed a new action in New York state court against Defendants (excluding Leland Robinson) on May 12, 2003, alleging breach of contract, tortious interference with contract, tortious interference with prospective economic advantage, and breach of third party beneficiary contracts. *Id.* ¶¶ 34–35. On July 14, 2004, the parties met at AREC's offices and agreed to a settlement that would extend the deadline for Defendants' payment and reporting obligations (the "2004 rider"). *Id.* ¶ 37. Although Defendants signed the 2004 rider, they did not abide by its terms. *Id.* ¶¶ 38–39. The parties thereafter moved to trial in July 2007, but settled once more on the third day of trial. *Id.* ¶ 43. Under that settlement (the "2007 settlement agreement"), the parties reaffirmed the 2002 settlement agreement and the 2004 rider. The 2007 settlement agreement required Defendants to: (1) make twelve payments to AREC; (2) provide AREC with copies of all licenses for Songwriters Glover and Morris; and (3) pay AREC directly for any

---

[4] Eventually, Defendants executed the 2002 settlement agreement on June 13, 2003. *Id.* ¶ 36.

royalties owed to AREC's clients (including a 20% "bonus" if Defendants received a license request, or a license payment, and did not inform AREC within fifteen days). *Id.* ¶¶ 43–44.

Responding to what it described as "multiple breaches of the 2002 and 2007 settlement agreements and 2004 rider," AREC brought suit on behalf of Songwriters Morris and Glover against Defendant Joseph Robinson, Jr. on July 25, 2012 in New York state court. *Id.* ¶ 52. AREC also sent Defendants notices of default and demand letters on April 1, 2015. *Id.* ¶ 53. After receiving what it believed to be unsatisfactory responses, AREC sent Defendants an email on May 4, 2015, informing Defendants that it was terminating the Exclusive Songwriters Agreements. *Id.* ¶ 57.

AREC filed this action on December 18, 2015, alleging breach of contract and seeking a declaratory judgment that its termination of the Exclusive Songwriters Agreements was valid. *See* Compl. (Doc. 1). Subsequently, Defendant Leland Robinson contacted several Songwriters "to pressure them into terminating their relationship with AREC." FAC ¶ 65. In June 2016, Robinson participated in a conference call with Guy Todd Williams, in which Robinson told Williams that Bravo TV was interested in producing a television show about Robinson and Williams putting on a reunion tour. *Id.* ¶ 69. On June 28, 2016, Robinson called Williams and told him that he wanted to deal with Williams directly and did not want to pay AREC. *Id.* In response to this conduct, the Court held a conference on August 17, 2016 and entered a stipulation and order on August 22, 2016, stating that:

> For the duration of this action, Robinson on the one hand and each of any one or more of [the Songwriters] on the other hand . . . shall not contact or cause anyone else to contact the other either in person, telephonically or electronically without counsel for Plaintiff . . . and counsel for Defendants.

*See id.* ¶ 72; Doc. 29.  Despite this Order, in March 2017, Defendant Robinson contacted Songwriters Williams and Payne.  FAC ¶ 73.  Robinson offered Williams $15,000 to settle his claims, and on March 24, 2017, Williams advised AREC that he would accept the settlement offer.  *Id.* ¶¶ 74–75.

Separately, on April 29, 2016, Defendants filed their first motion to dismiss.  *See* Doc. 18.  Defendants asserted that Plaintiff did not have standing to bring its declaratory judgment claim, that Plaintiff improperly split the action, and that Sugar Hill Music Publishing Ltd. was a required party to the litigation whose joinder would destroy diversity.  *Id.*  On March 8, 2017, the Court granted the motion to dismiss as to Plaintiff's declaratory judgment claim, and denied the motion in all other respects.  *See* Doc. 33.  AREC subsequently filed the FAC, adding a cause of action against Robinson, alleging that his contact with Williams constituted tortious interference.  *See* Doc. 34.  On May 5, 2017, Defendants moved to dismiss the declaratory judgment claim for lack of standing and the tortious interference cause of action for failure to state a claim.  *See* Doc. 46.

## II. Legal Standards

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) is the proper procedural vehicle for a motion to dismiss for lack of Article III standing rather than Rule 12(b)(6) because it concerns "the authority of a federal court to exercise jurisdiction."  *All for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006).

"Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a case."  *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013) (internal citations and quotation marks omitted).  In resolving a

12(b)(1) motion, a court may refer to evidence outside the pleadings. *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III. Discussion

### A. Article III Standing

In its March 8, 2017 Opinion, the Court determined that AREC could not maintain its claim for declaratory judgment because:

> It is not sufficient [to confer standing] that AREC has a beneficial interest in the settlement agreements because the Complaint does not bring an action based on those settlement agreements. For AREC to show that it has an interest in the Exclusive Songwriters

> Agreements, it must allege that the Exclusive Songwriters
> Agreements provided an independent interest to the Songwriters'
> agent, or the letter agreements demonstrate that AREC has an
> independent interest in the Exclusive Songwriters Agreements.
> AREC does not allege or provide evidence of any of the above.

*See* Doc. 33 at 12–13. Defendants argue that the agreements between AREC and the Songwriters "do not convey any beneficial interest in the Exclusive Songwriters Agreements."[5] Memorandum of Law in Support of Defendants' Motion to Dismiss Counts II and III of the Amended Complaint ("Defs.' Mem.") (Doc. 48), at 4. Plaintiff argues that while it may not have standing to seek a declaratory judgment solely on the basis of the Exclusive Songwriters Agreements, the relevant settlement agreements have made AREC "an intended beneficiary of those Agreements," giving it standing to sue. Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts II and III of the Amended Complaint ("Pl.'s Mem.") (Doc. 54), at 15.

The FAC relies more heavily than the original complaint on the role of the settlement agreements in giving AREC an interest in the Exclusive Songwriters Agreements, but in large part references the settlement agreements in conclusory ways. For example, the FAC now states that "federal court orders confirmed AREC's rights and status as the Songwriters' irrevocable agent, including the exclusive right to receive notices, statements and royalty payments from Defendants that are due to the Songwriters . . . under the Exclusive Songwriters Agreements." FAC ¶ 20; *see also* ¶¶ 33, 61. The factual allegations in the FAC are substantially the same as the allegations in the original complaint. For example, though presented more clearly in the

---

[5] Under the letter agreements, AREC is entitled to "fifty percent of all sums and assets which are recovered as a proximate result of [AREC's] activities pursuant to this agreement." *See* Cinque Decl. Ex. B (Williams letter agreement). AREC was also entitled to deduct any costs "off the top" from royalties recovered before dividing shares. *Id.* Finally, the Songwriters appointed AREC as attorney-in-fact "only for the purpose of depositing [royalty and other related] funds into [AREC's] escrow account," which would subsequently be paid to the Songwriters. *Id.*

FAC, both pleadings include allegations that the earlier settlement agreements established that "Defendants shall deal directly and solely with AREC." FAC ¶ 26; Compl. ¶ 27.

Nevertheless, AREC points to that same language in the settlement agreements in support of its renewed arguments for standing. *Id.* at 15–16 (citing FAC ¶¶ 20, 26, 43). In reply, Defendants argue that "these allegations at best would support an argument that AREC is entitled to sue for royalties due to the Songwriters." Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Counts II and III of the Amended Complaint ("Reply Mem.") (Doc. 61), at 2.

The Court agrees with Defendants. The earlier settlement agreements convey rights to AREC with respect to receiving notices, receiving royalty payments, and dealing directly with the Robinson Defendants. Even assuming AREC is correct that the settlement agreements have modified the Exclusive Songwriters Agreements to make AREC a third party beneficiary, that would at most confer upon AREC the right to sue to enforce the Exclusive Songwriters Agreements only as it pertains to notices and royalty payments. *See BNP Paribas Mortgage Corp. v. Bank of America, N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) ("Status as a third-party beneficiary does not imply standing to enforce every promise within a contract, including those not made for that party's benefit."). AREC points to no provision of the Exclusive Songwriters Agreements, the letter agreements it entered into with the Songwriters, or the settlement agreements that demonstrates that the Songwriters and Defendants intended to allow AREC to terminate the Exclusive Songwriters Agreements.[6] Indeed, all of the third-party beneficiary cases to which AREC cites in its opposition deal with a third-party suing to *enforce*

---

[6] Even Plaintiff, in the FAC, states that AREC's independent interest is "in the notices, statements and royalties due and owing under its clients' songwriter agreements," *not* that AREC has an independent interest in the Exclusive Songwriters Agreements as a whole. FAC ¶ 2.

8

provisions of a contract; none of them involve a third-party suing to establish *termination* of that contract.

AREC also argues that whether or not it is a third-party beneficiary, it has standing to sue under the Declaratory Judgment Act because in declaratory judgment cases, "the question . . . is whether the facts alleged . . . show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Pl.'s Mem. at 17 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). But the question before the Court is not whether it may, under the Declaratory Judgment Act, determine whether the termination of a contract was valid. The question is whether it is AREC, rather than the Songwriters, who possesses standing to enforce its attempted termination. Because AREC has not demonstrated an independent interest in the Exclusive Songwriters Agreements with respect to termination rights, the Court holds that it does not.[7]

### B.     Tortious Interference with Contract

To plead a tortious interference with contract claim, Plaintiff must allege "the existence of its valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages." *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). Defendants argue that AREC's claim for tortious interference should be dismissed because they have failed to allege either breach or damages. Defs.' Mem. at 11.[8]

---

[7] AREC has not requested leave to further amend its cause of action for declaratory judgment in the event that the Court dismisses it. Here, because the FAC was filed only after a full round of briefing and a decision from the Court on the question of standing, the Court finds that further amendment would be futile, and that dismissal with prejudice is appropriate. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015) (noting that granting amendment is more appropriate in cases where the non-moving party has not had "the benefit of a ruling" that highlights "the precise defects" of the complaint).

[8] Defendants also assert that AREC's agreement with Williams is limited to Williams' artist record royalties, but its claim is based on Williams' negotiations with Robinson over songwriter royalties. Defs.' Mem. at 10–11. Plaintiffs

Specifically, Defendants point out that the FAC alleges only that Defendant Leland Robinson improperly induced Guy Williams to anticipatorily breach his letter agreement with AREC, which they argue does not state a claim for tortious interference. *Id.* (quoting FAC ¶ 96). Defendants point to no cases in which a court has rejected a tortious interference claim based on anticipatory breach; however, Defendants argue that as a matter of logic, if AREC has elected "to treat the contract as breached by [Williams]," then the contractual relationship between AREC and Williams has ended, and AREC may not assert the letter agreement is still valid. Reply Mem. at 5–6.[9] Yet the very nature of *any* tortious interference claim is that a party's contractual relationship with a non-party was breached by virtue of the counterparty's wrongful interference. An anticipatory breach of contract (or repudiation) occurs when party expresses its intent not to perform the contract in a manner both "positive and unequivocal." *Princes Point LLC v. Muss Development LLC*, 30 N.Y.3d 127, 133 (2017) (quoting *Tenavision, Inc. v. Neuman*, 45 N.Y.2d 145, 150 (1978)). Unlike a breach of contract, a party affected by an anticipatory breach has two options—it can either pursue damages for the breach immediately or proceed as if the contract remains valid. *Id.* The fact that AREC has chosen to recognize the

---

point out that the agreement covers "any and all royalties and/or other assets which are or may be due and owing to [Williams] as a recording artist." Pl.'s Mem. at 19 n.6; *see also* Cinque Decl. Ex. B. At this stage of the litigation, Plaintiffs have sufficiently alleged that its relationship with Williams covered songwriting royalties as well as artist record royalties.

[9] Plaintiff points to *International Minerals & Resources, S.A. v. Bomar Resources, Inc.* to demonstrate that "the Second Circuit has recognized that a tortious interference claim may be based on an anticipatory breach." Pl.'s Mem. at 19 (citing *Int'l Minerals & Res.*, 5 F. App'x 5 (2d Cir. 2001)). Although there was an anticipatory breach in *International Minerals*, that was not the basis of the tortious interference claim. Instead, the plaintiff in that case had a contract to purchase a ship, which the ship's seller attempted to cancel. *Int'l Minerals*, 5 F. App'x at 8. Because the plaintiff chose not to accept the anticipatory repudiation, the contract was still in force at a later point, when the defendant convinced the ship's seller to sell the ship to him rather than the plaintiff. *Id.* The basis of the tortious interference claim was therefore the actual breach of contract—when the ship's seller sold the ship to the defendant—rather than the anticipatory breach—when the ship's seller attempted to cancel the contract. *Id.* Nevertheless, the Court sees no reason why an anticipatory repudiation claim cannot form the basis of a tortious interference claim.

breach of its contract with Williams does not mean that it no longer has the ability to sue Defendant Robinson to recover damages based on its contractual relationship with Williams.[10]

Second, Defendants argue that even if AREC has adequately plead breach of contract, it has not alleged that it actually sustained any damages. Defs.' Mem. at 12. But as AREC points out in its brief, under New York law, "when an anticipatory breach occurs . . . the non-breaching party is entitled to claim damages for total breach." Pl.'s Mem. at 19; *see also Princes Point*, 30 N.Y.3d at 133. Similarly, a plaintiff in a tortious interference with contract case is entitled to "damages in the amount of the full pecuniary loss of the benefits of the contract." *See Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 589 (2d Cir. 1996); *see also AP Links, LLC v. Russ*, 09 Civ. 5437 (JS), 2017 WL 3394599, at *8 (E.D.N.Y. Aug. 7, 2017). This includes consequential damages. *Id.* Therefore, to the extent that AREC can show that Defendant Robinson's interference led Williams to breach (or anticipatorily breached) his contract with AREC, AREC is correct that it would be entitled to recover from Defendant Robinson the full benefits of its agreement with Williams—namely, "50% of all outstanding royalties owed Williams plus an additional 20% [which is owed pursuant to the 2007 Settlement Agreement]." Pl.'s Mem. at 21. Therefore, the Court finds that AREC has stated a claim for tortious interference with contract.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, the motion is granted with prejudice as to Plaintiff's declaratory judgment claim and denied as to Plaintiff's tortious interference claim. Plaintiff's breach of

---

[10] To the extent that Defendants argue that AREC is now barred from claiming to represent Williams in the future on the basis of their decision to pursue damages for breach of contract now, that issue is not before the Court and not relevant to its decision on the instant motion to dismiss.

11

contract claim is not impacted by this opinion. The Clerk of the Court is respectfully directed to terminate the motion (Doc. 46).

It is SO ORDERED.

Dated: March 29, 2018.
New York, New York

_____
Edgardo Ramos, U.S.D.J.